Slip Op. 24-140

# UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

HARDWARE RESOURCES, INC.,

    Plaintiff,

v.

UNITED STATES,

    Defendant,

COALITION OF AMERICAN
MILLWORK PRODUCERS,

    Defendant-Intervenor.

</td><td>

Before: Joseph A. Laroski, Jr., Judge

Court No. 23-00150

</td></tr>
</table>

## OPINION AND ORDER

[Remanding to the Department of Commerce a decision interpreting the scope of the antidumping and countervailing duty orders on wood mouldings and millwork products from the People's Republic of China.]

Dated:  December 16, 2024

Jill A. Cramer, Mowry & Grimson, PLLC, of Washington, DC, argued for plaintiff Hardware Resources, Inc.  With her on the brief were Jeffrey Sheldon Grimson, Bryan Patrick Cenko, Clemence Dongwoo Kim, Evan P. Drake, Kristin Heim Mowry, Ronalda G. Smith, Sarah Marie Wyss, and Yixin (Cleo) Li.

Emma E. Bond, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, argued for defendant United States Government.  With her on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Claudia Burke, Deputy Director.  Of counsel, arguing for defendant, was Leslie Mae Lewis, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

Wesley E. Weeks, Wiley Rein, LLP, of Washington, DC, argued for defendant-intervenor Coalition of American Millwork Producers. With him on the brief were Timothy C. Brightbill, Adam Milan Teslik, Elizabeth Seungyon Lee, Laura El-Sabaawi, Maureen Elizabeth Thorson, and Theodore Paul Brackemyre.

Laroski, Judge: This action is a challenge to the final scope ruling of the U.S. Department of Commerce ("Commerce") regarding edge-glued wood boards imported by Hardware Resources, Inc. ("Hardware Resources"). Commerce's final scope ruling found that Hardware Resources' edge-glued boards are included in the antidumping duty ("AD") and countervailing duty ("CVD") orders on wood mouldings and millwork product from the People's Republic of China (collectively, the "Orders"). Final Scope Ruling on Hardware Resources' Edge-Glued Boards, P.R. 25 (Aug. 2, 2023) ("Final Scope Ruling"). Commerce ruled that the edge-glued boards fit the physical description of subject merchandise based on the plain language of the Orders because the boards are made of wood and continuously shaped; thus, the boards are within the scope of the Orders. Final Scope Ruling at 9. Hardware Resources asserts that Commerce skipped a threshold requirement contained in the scope description when it did not first determine that the merchandise was a moulding or a millwork product. Hardware Resources moves for judgment on the agency record. The United States (the "Government") and the Coalition for American Millwork Producers ask that the court sustain Commerce's scope ruling.

## BACKGROUND

### I.    Antidumping and Countervailing Duty Orders

On February 16, 2021, Commerce issued antidumping and countervailing duty orders on Wood Mouldings and Millwork Products from the People's Republic of China ("China"). AD Order, 86 Fed. Reg. at 9,486; CVD Order, 86 Fed. Reg. at 9,484. Commerce defined the scope of the Orders, in relevant part, as follows:

> The merchandise subject to the Orders consists of wood mouldings and millwork products that are made of wood (regardless of wood species), bamboo, laminated veneer lumber (LVL), or of wood and composite materials (where the composite materials make up less than 50 percent of the total merchandise), and which are continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn). The merchandise subject to [the Orders] can be continuously shaped along any of its edges, ends, or faces.

> The percentage of composite materials contained in a wood moulding or millwork product is measured by length, except when the composite material is a coating or cladding. Wood mouldings and millwork products that are coated or clad, even along their entire length, with a composite material, but that are otherwise comprised of wood, LVL, or wood and composite materials (where the non-coating composite materials make up 50 percent or less of the total merchandise) are covered by the scope.

> The merchandise subject to the Orders consists of wood, LVL, bamboo, or a combination of wood and composite materials that is continuously shaped throughout its length (with the exception of any end-work/dados), profiled wood having a repetitive design in relief, similar milled wood architectural accessories, such as rosettes and plinth blocks, and finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn). The scope includes continuously shaped wood in the forms of dowels, building components such as interior paneling and jamb parts, and door components such as rails, stiles, interior and exterior door frames or jambs (including split, flat, stop applied, single- or double-rabbeted), frame or jamb kits, and

packaged door frame trim or casing sets, whether or not the door components are imported as part of a door kit or set.

The covered products may be solid wood, laminated, finger-jointed, edge-glued, face-glued, or otherwise joined in the production or remanufacturing process and are covered by the scope whether imported raw, coated (e.g., gesso, polymer, or plastic), primed, painted, stained, wrapped (paper or vinyl overlay), any combination of the aforementioned surface coatings, treated, or which incorporate rot-resistant elements (whether wood or composite). The covered products are covered by the scope whether or not any surface coating(s) or covers obscure the grain, textures, or markings of the wood, whether or not they are ready for use or require final machining (e.g., endwork/dado, hinge/strike machining, weatherstrip or application thereof, mitre) or packaging.

All wood mouldings and millwork products are included within the scope even if they are trimmed; cut-to-size; notched; punched; drilled; or have undergone other forms of minor processing.

. . .

Excluded from the scope of the Orders are countertop/butcherblocks imported as a full countertop/butcherblock panel, exterior fencing, exterior decking and exterior siding products (including solid wood siding, non-wood siding (e.g., composite or cement), and shingles) that are not LVL or finger jointed; finished and unfinished doors; flooring; parts of stair steps (including newel posts, balusters, easing, gooseneck, risers, treads, rail fittings and stair stringers); picture frame components three feet and under in individual lengths; and lumber whether solid, finger-jointed, or edge-glued. To be excluded from the scope, finger-jointed or edge-glued lumber must have a nominal thickness of 1.5 inches or greater and a certification stamp from an American Lumber Standard Committee-certified grading agency. The exclusion for lumber whether solid, finger-jointed, or edge-glued does not apply to screen/"surfaced on 4 sides" (S4S) and/or "surface 1 side, 2 edges" (S1S2E) stock (also called boards) that are finger-jointed and/or edge-glued, or to finger-jointed and/or edge-glued moulding or millwork blanks (whether or not resawn). Accordingly, S4S and S1S2E stock/boards that are not finger-jointed or edge glued are excluded from the scope of the Orders.

Final Scope Ruling at 2–3; AD Order, 86 Fed. Reg. at 9,488–89; CVD Order, 86 Fed.

Reg. 9,485–86.

## II.    Scope Inquiry Proceedings

Hardware Resources filed a scope ruling application on March 9, 2023,

requesting that Commerce find that its edge-glued boards are outside the scope of

the Orders.  Scope Ruling Application, C.R. 1, P.R. 1 (Mar. 9, 2023).  On April 10,

2020, Commerce initiated the scope inquiry.  Initiation of Scope Inquiry, P.R. 13

(Apr. 10, 2023).  Drawing from Hardware Resources' Scope Ruling Application,

Commerce described the merchandise subject to the inquiry as:

> [E]dge-glued boards which are made of solid white birch that is finger-jointed and edge-glued, measuring eight feet in length and 5/8- inches in thickness and with a width ranging from 2.5 to 12 inches. An ultraviolet (UV) coating is applied to the boards except the bottom edge that is left as natural material. The corners of the boards are lightly sanded to smooth the corners. Hardware Resources states that the edge-glued boards will be further processed into cabinet parts after importation into the United States, although they could be used in other applications.
>
> In their condition as imported, the boards have a mark of approximately one mm that was added using a straight saw along the length of one side of the board. This mark is used by Hardware Resources (or its customer) as a guide which indicates which side of the board is to be used to place the groove that is added after import. Hardware Resources states the marking has no function other than as a visual guide for where a groove will be cut after importation. The marking is removed once the groove is added after importation. The edge-glued boards also require dovetailing as well as additional machine processing such as notching and drilling after importation in order to be suitable for use as a drawer side.

Final <u>Scope Ruling</u> at 4 (internal citations omitted).

On August 2, 2023, Commerce issued its final scope ruling, determining that the edge-glued boards imported by Hardware Resources are within the scope of the Orders. <u>Final Scope Ruling</u> at 11. This action followed.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2020) and 19 U.S.C. § 1516a(a)(2)(B)(vi) (2020). Section 1581(c) provides for exclusive jurisdiction over any civil action commenced under section 1516a. 28 U.S.C. § 1581(c). Section 1516a(a)(2)(B)(vi) provides for judicial review of a determination of "whether a particular type of merchandise is within the class or kind of merchandise described in an . . . antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi). In conducting its review, the court must set aside any determination, finding, or conclusion found "to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." <u>Id.</u> § 1516a(b)(1)(B)(i).

## DISCUSSION

### I. Parties' Contentions

Hardware Resources argues that Commerce's determination that Hardware Resources' edge-glued boards are covered by the scope of the Orders on "wood

mouldings and millwork products" is unsupported by substantial evidence and contrary to law. Compl. at 9, ECF No. 10 (Sept. 1, 2023). Specifically, Hardware Resources contends that (1) Commerce failed to consider whether, as a threshold question, Hardware Resources' edge-glued boards are "wood mouldings or millwork products" as specified by the plain language of the scope description; (2) Commerce erred in determining that the plain language of the scope description does not incorporate an end-use limitation; (3) Commerce erred in finding that Hardware Resources' edge-glued boards are "continuously shaped;" (4) Commerce improperly disregarded evidence from various primary interpretive sources listed under paragraph (k)(1) of 19 C.F.R. § 351.225 (2024) (the "(k)(1) sources") that serve to help clarify ambiguous scope language, including prior determinations of the U.S. International Trade Commission (the "Commission" or "ITC") and a prior scope ruling issued to Loveday Lumber; and (5) to the extent that the court regards the scope language ambiguous and analysis of the (k)(1) sources not dispositive, Commerce failed to consider the factors set forth under paragraph (k)(2) of section 351.225 (the "(k)(2) factors"). Pl. Hardware Br. in Supp. of Mot. for J. on Agency R. at 16, ECF No. 30 (Jan. 26, 2024) ("Hardware Br.") at 10–12.

In response, the Government argues that "Commerce's practice is to not make scope inclusion or exclusion decisions based on end-use requirements, absent clear scope language indicating otherwise." Def. United States Br. in Supp. of Resp.

to Pl. Mot. for J. on Agency R. at 10, ECF No. 32 (Mar. 26, 2024) ("Gov. Br."). The

Government explains that when Commerce intends to include an end-use

restriction, its practice is to use such express terms as "'only' or 'solely' to indicate

restrictions on end uses for certain products." Gov. Br. at 16 (citing King Supply

Co., LLC v. United States, 674 F.3d 1343, 1349 (Fed. Cir. 2012)). Here, the scope

language does not include the requisite express terms because "the only scope

language identified by Hardware [Resources] . . . was the general term 'wood

mouldings or millwork products,'" which "does not reference use at all." Gov. Br. at

18 (citing Final Scope Ruling at 6). Therefore, according to the Government,

Hardware Resources' argument that its edge-glued boards are excluded from the

scope based on downstream production that processes the edge-glued boards into

cabinet sides lacks merit. Id. at 18.

The Government argues that the scope's plain language, along with (k)(1)

interpretive sources, are dispositive, so reference to the (k)(2) factors is

unnecessary. Id. at 14–15. The Government states that the scope language covers

products that are "made of wood," including "continuously shaped wood or finger-

jointed or edge-glued moulding or millwork blanks (whether or not resawn)." Id. at

13–14 (citing Final Scope Ruling at 8–11). Although the scope language does not

define "continuously shaped," the Government contends that Commerce considered

relevant (k)(1) interpretive sources to reasonably conclude that Hardware Resources' edge-glued boards meet this requirement.  Id. at 14.

## II.     Legal Standard

When questions arise as to whether a particular product is covered by the scope of an AD or CVD order, Commerce will conduct a scope inquiry and issue a scope ruling.  19 C.F.R. § 351.225(a) (2024).  In determining whether a product falls within the scope of an AD or CVD order, Commerce "consider(s) the language of the scope and may make its determination on this basis alone if the language of the scope, including descriptions of merchandise expressly excluded from the scope, is dispositive."  § 351.225(k)(1).  "If the scope is unambiguous, it governs."  Meridian Prods., LLC v. United States, 851 F.3d 1375, 1381 (Fed. Cir. 2017).

"In reviewing the plain language of a duty order," Commerce must consider the (k)(1) sources.  § 351.225(k); see Meridian, 851 F.3d at 1382.  The (k)(1) sources include the description of the merchandise considered by Commerce and the Commission when crafting the scope, as well as previous determinations made by Commerce and the Commission.  § 351.225(k)(1)(i); see Meridian, 851 F.3d at 1382.

If Commerce "determines that the sources under paragraph (k)(1) of this section are not dispositive," Commerce will then consider the (k)(2) factors. § 351.225(k)(2)(i).  The (k)(2) factors include (A) the physical characteristics of the product; (B) the expectations of the ultimate user; (C) the ultimate use of the

product; (D) the channels of trade in which the product is sold; and (E) the manner in which the product is advertised and displayed. Id. "In the event of a conflict between the factors under paragraph (k)(2)(i) of this section, paragraph (k)(2)(i)(A) will normally be allotted greater weight than the other factors." § 351.225(k)(2)(ii). "In conducting this analysis, it is well settled that Commerce has discretion in how to balance these factors." Meridian, 851 F.3d at 1382.

## III. Commerce did not consider whether Hardwood Resources' edge-glued boards were "wood mouldings and millwork products"

Hardware Resources argues that the opening phrase of the scope description — "[t]he merchandise subject to the Orders consists of wood mouldings and millwork products that are made of wood. . ." — requires Commerce to first consider whether a product is a wood moulding or millwork product, "[t]hen if, and only if, that initial requirement is met, the other limiting factors apply," including the physical descriptions of the subject merchandise set forth in the subsequent lines of the Orders (i.e., "made of wood . . ."). Hardware Br. at 16 (citing AD Order, 86 Fed. Reg. at 9,488). Hardware Resources explains that a plain language analysis of the phrase "mouldings and millwork products" implies an end-use requirement that a product subject to the Orders must be intended for use as a moulding or millwork product, and that Hardware Resources' product does not satisfy this requirement. Hardware Br. at 22–23 (citing King Supply, 674 F.3d at 1345–48).

According to Hardwood Resources, because Commerce did not give meaning to the phrase "wood mouldings and millwork products" and instead exclusively based its determination on the physical characteristics specified in the scope description, Commerce's "cursory discussion" of the plain language of the scope was erroneous, constituted an improper application of the "three-part scope analysis set forth in its own regulations and established by court precedent, and a remand is warranted on that basis alone." Hardware Br. 16–17.

Moreover, had Commerce not skipped the threshold question and instead turned to (k)(1) sources to help define the plain language of the phrase "wood mouldings and millwork product," Hardware Resources explains, Commerce would have concluded that Hardware Resources' edge-glued boards, which are manufactured into cabinet parts upon importation, are not wood mouldings or millwork products and do not fall within the scope of the Orders. Id.

The Government disagrees with Hardware Resources, arguing that Hardware Resources' edge-glued boards "meet all physical characteristics required by the scope" and are "indistinguishable" from a millwork product. Gov. Br. at 13, 26 (citing Final Scope Ruling at 8–11). Furthermore, the Government contends that Commerce properly explained in its scope ruling that "the scope covers mouldings and millwork products that are 'made of wood,' and 'continuously shaped wood or finger-jointed or edge-glued moulding or millwork blanks.'" Gov Br. at 14 (citing

Final Scope Ruling at 8–9). The Government explains that the only ambiguity in the scope language is the phrase "continuously shaped," which can be clarified using (k)(1) sources. Id. The Government contends that "Hardware [Resources] is wrong in arguing that 'the definition of 'wood mouldings {or} millwork products' is inherently end-use based because Commerce does not make scope decisions based on end-use requirements unless the scope language is clearly exclusionary; and here, there is no clear scope language." Gov. Br. at 15 (citing Hardware Br. at 23 (citing Final Scope Ruling at 10)). The Government also argues that because the scope language includes specific merchandise to be excluded from the scope of the Orders but does not specify that merchandise should be excluded based on end-use, "Hardware [Resources'] claim that its merchandise was 'further manufactur{ed} into cabinets' was 'inconsequential.'" Gov. Br. at 19 (citing Final Scope Ruling at 10).

Commerce must follow the procedures set forth in its regulations as informed by Federal Circuit precedent in conducting its scope analysis. [1] This includes assessing the plain language of the scope description and, where appropriate,

---

[1] Since the amendment of 19 C.F.R. § 351.225(k)(1) in September 2021, this court has interpreted Commerce's revised regulation to reflect the approach in Meridian Products. See SMA Surfaces, Inc. v. United States, 617 F. Supp. 3d 1263, 1272–73 (CIT 2023); id. at 1272 n.2 ("In September 2021, Commerce promulgated a final rule that amended the text of 19 C.F.R. § 351.225(k)(1) to reflect the three-step inquiry [in Meridian Products] that had been fashioned by the Federal Circuit's combining of case law and the prior code provision.").

referring to the (k)(1) sources to interpret the plain language of the scope

description in order to reach its determination.  See § 351.225(k)(1)(i); Meridian,

851 F.3d at 1382.

In this, as in any, scope inquiry, the starting point for Commerce's analysis

must be the language of the scope description itself.  Here, the opening paragraph of

the scope description contained in the Orders is as follows:

> The merchandise subject to the Orders consists of wood mouldings and
> millwork products that are made of wood (regardless of wood species),
> bamboo, laminated veneer lumber (LVL), or of wood and composite
> materials (where the composite materials make up less than 50
> percent of the total merchandise), and which are continuously shaped
> wood or finger-jointed or edge-glued moulding or millwork blanks
> (whether or not resawn).

Final Scope Ruling at 2.  In its analysis, Commerce begins by noting, correctly, that

the scope description covers "items 'made of wood,' 'continuously shaped wood or

finger-jointed or edge-glued moulding or millwork blanks (whether or not resawn),'

and 'the merchandise subject to this investigation can be continuously shaped along

any of its edges, ends, or faces.'"  Id. at 8.  In so doing and in the analysis that

follows, however, it appears Commerce ignores the initial requirement set forth in

the first phrase of this paragraph.  Only "wood mouldings and millwork products

*that*" are made of wood (or the other listed materials) and are "continuously shaped

or finger-jointed or edge-glued moulding or millwork blanks" are subject to the

Orders.  Id. (emphasis added).  The phrase "wood mouldings and millwork products

that" must be given meaning in the context of the scope description, and, consequently, Commerce must determine whether Hardware Resources' product is a wood moulding or millwork product. See Final Scope Ruling at 2.

Notwithstanding the Government's extensive briefing arguing that Hardware Resources' product is a wood moulding or millwork product as proscribed by the scope description, see Gov. Br. at 20–26, Commerce, in its ruling, draws no such conclusion. Final Scope Ruling at 8–10. Commerce once indicates that the process by which Hardware Resources' boards are sawed to make a groove results in a product that is "indistinguishable" from a millwork product. Id. at 9. However, this statement and the accompanying discussion relates to its analysis of whether Hardware Resources' product is "continuously shaped" and not a conclusion that Hardware Resources' product is millwork product. Id. Similarly, Commerce once makes reference to the Commission's definition of "wood mouldings," but only to dismiss Hardware Resources' arguments regarding the existence of an end-use limitation in the scope description. Id. at 10.

Commerce's scope ruling, with respect to Hardware Resources' product, stands in contrast to prior Commerce determinations regarding the scope of these Orders. For example, in Commerce's scope determination regarding Loveday Lumber's lengthwise sawn ("LWS") scarf-jointed wood reveal strips and wood squares, Commerce draws a clear conclusion with regard to this question:

"Loveday's LWS wood products . . . are also not *millwork products* made of wood that are continuously shape, finger-jointed, or edge-glued." Final Scope Ruling on the Antidumping and Countervailing Duty Orders on Wood Mouldings and Millwork Products from China: Request by Loveday Lumber Company, Inc., P.R. 3, Ex. 10 at 10 (May 16, 2022) ("Loveday Scope Ruling") (emphasis added). Similarly, in the original investigations, Commerce begins its preliminary scope decision memorandum with consideration of the definition of "wood mouldings and millwork products," Wood Mouldings and Millwork Products from China: Preliminary Scope Decision Memorandum at 8, A-351-853, A-570-117, C-570-118 (Aug. 5, 2020), and then proceeds to consider whether a number of products, including wood shutter components and components of unassembled kitchen cabinets, fall within the scope of the Orders.[2] Id. at 37–38, 43–44.

Whether Hardware Resources' boards are mouldings or millwork products under the plain language of the Orders was central to Hardware Resources' request for a scope ruling. The phrase "wood mouldings and millwork products that are"

---

[2] In this determination, Commerce also considers and ultimately declines to modify the definition of mouldings and millwork products to specify that such products "are used as a covering for floors, walls, doors, and other areas, primarily in residential and nonresidential construction, and for decorative, exposed applications . . . ." Id. at 16–18. This discussion bears directly on the issue raised by Hardware Resources regarding the inherent existence of an end-use limitation in the term "wood mouldings and millwork products." For the reasons stated in this Opinion and Order, the court does not reach this issue.

imposes an explicit requirement within the scope description, the meaning and import of which the parties dispute. Under 19 C.F.R. § 351.225(k)(1), Commerce was not free to ignore this phrase in its scope analysis.

## CONCLUSION AND ORDER

Commerce's regulation contemplates that it give thorough and fair consideration to "language of the scope," 19 C.F.R. § 351.225(k)(1), in deciding whether certain merchandise is within the scope of an order. Commerce failed to do so here. It ignored the threshold question of whether the product at issue is a wood moulding or millwork product. The court does not hold that Hardwood Resources' boards are, or are not, wood mouldings or millwork products or that the boards are within the scope of the Orders. That is a determination for Commerce to make upon remand. The court holds instead that Commerce must reconsider its decision in light of the deficiencies the court has identified.

Because the court is ordering reconsideration of the Final Scope Ruling, it does not reach, at this stage of the litigation, Hardware Resources' claims regarding Commerce's determination with respect to an inherent end-use limitation contained in the scope description, Commerce's interpretation of the term "continuously shaped," or Commerce's consideration of various interpretive sources and factors under 19 C.F.R. § 351.225(k). Therefore, upon consideration of all papers and proceedings herein, it is hereby

ORDERED that Commerce, within 90 days from the date of issuance of this Opinion and Order, shall submit a redetermination upon remand ("Remand Redetermination") that complies with this Opinion and Order; it is further

ORDERED that defendant shall supplement the administrative record with documents, or portions thereof, considered by Commerce in reaching the decision in the Remand Redetermination within 14 days of the Remand Determination; it is further

ORDERED that subsequent proceedings shall be governed by USCIT Rule 56.2(h); and it is further

ORDERED that the parties shall file the joint appendix within 14 days after the filing of replies to the comments on the Remand Redetermination.


/s/      Joseph A. Laroski, Jr.
Joseph A. Laroski, Jr., Judge

Dated: December 16, 2024
       New York, New York